(No. 3985— )

DAVID F. MALONE, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed November 9, 1948.*

JOHN F. GIBBONS, Attorney for Claimant.

HON. GEORGE F. BARRETT, Attorney General, and C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

BERGSTROM, J.

Claimant, David F. Malone, filed his claim for compensation under the Workmen's Compensation Act for injuries sustained while employed by respondent by the Department of Public Works and Buildings in the Division of Highways.

On June 1, 1943 claimant was one of a group of men removing mud and dirt left on the highway as a result of previous heavy rains. He was using an endloader to clear a landslide from S.B.I. Route 100, about nine miles north of Grafton. About 1:30 P.M. claimant drove the endloader to the edge of an embankment to dump a load of debris. As he stopped the machine preparatory to releasing the load, the machine began to tilt forward. Thinking it was going to tip over, he jumped and landed in the muck at the side of the pavement, suffering compound fractures of the left tibia and fibula just above the ankle. The proximal ends of the bones protruded into the muck in which claimant had fallen.

There is no question of jurisdiction raised in the record and we find from the evidence that claimant was injured out of and during the course of his employment.

Claimant was rendered first aid by Dr. Julius Katz of Grafton, who suggested transfer to St. Joseph's Hospital in Alton. Accordingly, an ambulance was called, and claimant was transported to Alton. While he was enroute, the injury was reported to the Springfield office

of the Division of Highways, and orders were given to transfer claimant to Barnes Hospital, St. Louis, and place him in the care of Dr. J. Albert Key, Professor of Clinical Orthopedics, Washington University. That same evening, Dr. Key reduced the fracture and placed the leg in a cast with traction.

Claimant was under the care of Dr. Key from that time until January 16, 1948, on which date Dr. Key made his final examination. Various complications developed with respect to claimant's injured ankle, and he was confined to the hospital and operated on at six different times. The last operation was performed on March 12, 1947. On January 20, 1948, Dr. J. Albert Key submitted his final report to the Division of Highways, as follows:

"I examined Mr. Malone again on 1-16-48. At this time Mr. Malone complained of pain in the middle of his foot and over the left ilium at the point where the graft was removed. He also complains of tenderness in both scars and states that his left foot and ankle are stiff in the morning on getting up. On examination the wound over the ilium and the wounds in his leg are all healed. Movement in the ankle is almost normal in all directions. The tibia is firmly united and there is some tenderness on deep pressure over the lower scar over the crest of the ilium. X-rays show that a bone graft from the ilium has taken and has completely obliterated the cavity which was present just above the ankle joint. I do not think that Mr. Malone needs any further treatment."

Mr. Malone was also examined by Dr. Oscar P. Hampton, Jr. on February 27, 1948, who made a physical and x-ray examination of claimant and reported as his conclusion, in his report under date of March 1, 1948, as follows:

"The left leg measured three-fourths of an inch shorter than the right. There was a well healed linear scar about 4½ inches long over the antero-medial surface of the upper portion of the leg. Palpation revealed a defect in the underlying bone and he complained of some tenderness on pressure over the lower end of this scar. Over the medial surface of the lower third of the leg there was a broad irregular scar attached to the underlying bone and projecting proximally from

this scar was a well healed linear scar apparently that of an operation. No edema was noted about the leg or ankle but there was some thickening of the soft tissues about the ankle. The left calf measured 1¼ inches smaller in circumference than the right. There was power in all muscle groups of the left leg and foot and sensation was apparently normal.

The range of motion in the left ankle joint was limited to about 50% of that on the opposite side. Dorsal flexion was limited at 90 degrees and plantar flexion at 115 degrees. Inversion of the foot was limited to about 50% of normal, but eversion appeared equal to that on the left. There was minimal restriction of motion in the toes of the left foot.

X-RAY EXAMINATION—X-ray films of the lower two-thirds of the bones of his left leg and of his left ankle joint were made in my office. These reveal an old united fracture of the distal portion of the tibia and fibula. Union of the tibia has occurred with slight posterior angulation.

There is a narrow linear defect in the upper portion of the tibia apparently that created when the bone graft was removed.

CONCLUSIONS—His fracture of the tibia and fibula on the left have solidly united with three-fourths of an inch shortening of the leg, and with about 50% limitation of motion in the left ankle joint. He has a broad, irregular, attached scar over the inner portion of the lower third of the left leg which is of some clinical significance. This scar is susceptible to wounding by relatively minimal trauma. The defect in the upper tibia is of little, if any, clinical significance. Any pain or tenderness about the left wing of the ilium is not to be considered disabling. The present condition of his left leg is probably permanent except that there probably will be some rebuilding of the musculature."

Claimant testified that his leg was painful and sore, swollen and cramps a lot; that it was difficult for him to walk or get around with ease,, and that he had about an 80% loss of the use of his leg. Commissioner Jenkins, from an observation of the injured leg, reported that it shows a depression, discoloration and apparent wasting of tissue and muscle above the left ankle bone on the inside of left leg, approximately one-third of the distance to calf of leg. It was his opinion that claimant suffers a 33-1/3% permanent partial loss of the use of his left leg, and from a review of all the evidence we think this is fair and reasonable, and we so find.

At the time of the injury claimant was married and had one child under sixteen years of age dependent upon him for support. Respondent paid the sum of $1791.48 for medical, hospital and other services covering treatment of claimant. He earned a total of $1620.00 for the year immediately preceding his injury. His compensation rate, therefore, would be the maximum of $15.00, increased by 10%, or to $16.50 per week, the accident having occurred on June 1, 1943. He was paid for his total temporary incapacity for the period of 64 weeks, or until August 22, 1944. The sum paid to him was $1211.21 for this purpose, which was an overpayment of $155.21. His compensation for 33-1/3% permanent partial loss of the use of his left leg would be 63-1/3 weeks at $16.50 per week, or a total sum of $1045.00, from which must be deducted the overpayment of $155.21 paid to him for unproductive time, leaving a balance of $889.79.

An award is therefore allowed in favor of claimant, David F. Malone, in the amount of $889.79, all of which has accrued and is payable forthwith.

Edith Gamerdinger was employed to take and transcribe the testimony in this case and submitted her invoice in the sum of $6.50, which we find is fair, reasonable and customary. An award is also made in favor of Edith Gamerdinger in the sum of $6.50.

This award is subject to the approval of the Governor, as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."